1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2
    - - - - - - - - - - - - - - - X
3
    PRESTIGE GROUP, INC.
4
                     Plaintiff        09-CV-1357 (ENV)
5
       -against-                 :    U.S. Courthouse
6                                     Brooklyn, N.Y.
    HENDERSON HILL ADULT HOME    :
7   & ASSISTED LIVING PROGRAM,
    INC., ET AL.
8
                     Defendants    :
9                                     August 4, 2010
    - - - - - - - - - - - - - - - X    2:30 p.m.
10
    BEFORE:
11
              HONORABLE ERIC N. VITALIANO
12            United States District Judge

13

14  APPEARANCES:

15  For the Plaintiff:      RICHARD S. BONFIGLIO
    Prestige Group          238 92nd Street
16                          Brooklyn, New York 11209

17

18

19  For the Defendant:      MENDEL ZILBERBERG & ASSOCIATES, P.C.
    Island Manor            6619 Thirteenth Avenue
20                          Brooklyn, New York 11219
                            BY:  MENDEL ZILBERBERG, ESQ.
21                               PAUL J. SALAZAR, ESQ.
                                 SARA MOSKOWITZ
22

23

24

25

```
 1   For the Defendant:        HINMAN STRAUB
     Henderson Hill            121 State Street
 2                             Albany, New York 12207
                               BY:  DAVID T. LUNTZ
 3

 4

 5   Court Reporter:           RONALD E. TOLKIN, RMR, CRR
                               225 Cadman Plaza East
 6                             Brooklyn, New York 11201
                               718-613-2647
 7

 8
     Proceedings recorded by mechanical stenography, transcript
 9   produced by Computer-Assisted Transcript.

10

11                       ***

12
```

13          THE CLERK:  The case on the calendar is Prestige

14   Group, Inc., versus Henderson Hill Adult Home & Assisted

15   Living Program and others.  The case number is 09-CV-1357.  It

16   is on for oral argument.

17          Will the attorneys please note their appearances,

18   beginning with Plaintiffs' counsel.

19          MR. BONFIGLIO:  Richard S. Bonfiglio, 238 92nd

20   Street, Brooklyn, New York, on behalf of the plaintiff, The

21   Prestige Group, Inc..

22          Good afternoon, Your Honor.

23          THE COURT:  Good afternoon.

24          MR. ZILBERBERG:  Mendel Zilberberg, of 6619

25   Thirteenth Avenue, Brooklyn, New York, on behalf of Island

1   Manor, Baywood, Willy Beer, Charles Scharf and Daniel Stern.

2          THE COURT:  Okay.

3          Who else is present?

4          MR. ZILBERBERG:  Paul Salazar is here from my

5   office.

6          THE COURT:  Okay.  Anyone else?

7          MR. LUNTZ:  David Luntz from Hinman Straub, 121

8   State Street, Albany, New York, for Henderson Hill, Angelo

9   Servideo, Joseph Cillo, Joseph Sirangelo, Philip Emma, Vincent

10  Sirangelo.

11         THE COURT:  Do we have the complete slate?  One more

12  voice?

13         MR. ZILBERBERG:  Sara Moskowitz is from my office,

14  but she's awaiting admission.

15         THE COURT:  We will note her appearance.

16         I have certainly gotten your papers.  This motion

17  actually only affects the defendant buyers and the sellers.

18  So counsel for the defendant sellers are here.

19         Defendant buyers and the broker, and not defendant

20  themselves.  So we can expect to hear from the broker's

21  lawyers and the defendant buyer's lawyers.

22         Do you wish to add anything to your papers?

23         MR. ZILBERBERG:  Yes, Your Honor.

24         The standard for a 12(b)(6) motion was best

25  articulated in the Bell and Atlantic case.  It requires that

1    Plaintiffs give a short and plain statement showing the

2    pleader is entitled to relief in order to give the defendant

3    fair notice of what the claim is and the ground upon which it

4    rests.

5            We have not seen that, and that is why we initially

6    brought the 12(b)(6) motion.  The plaintiff also has to

7    provide grounds of their entitlement, for which they haven't

8    brought.

9            What is particular about this case is that in the

10   complaint itself, the claim against the buyer defendants were

11   the acts of 2003.  And in fact, the relief requested was

12   interest and damages going back to 2003.

13           In 2003 is when the management agreement was

14   executed.  And it was Plaintiffs' position, in the complaint,

15   that that was a closing.  That although title had not changed,

16   they cited the New York Law which, obviously, in our papers,

17   we disagreed with, that that meant it was a functional

18   closing.

19           The problem with that is, that as it relates to

20   tortuous interference, if, in fact, the event occurred in

21   2003, there's a three-year statute of limitations.  Which, as

22   we cited in our papers, the Spinapp case, they're very clear,

23   there is a three-year statute of limitations and it's not a

24   continuing tort and it goes from the time at which it was

25   committed.  As such, it would be barred by the statute ever

1  limitations.

2         Even without the statute of limitations, the

3  elements of tortuous interference are a valid contract between

4  a plaintiff and a third party; arguably, that happened hear.

5  The defendant's knowledge of the contract; arguably, we knew

6  about that.  Defendants' intent to induce, agree to

7  destruction of a contractual relationship; clearly, there is

8  no indication of where there was intent on our part.  The

9  bargaining defendants were acting solely for their own

10  personal business reasons in trying to move the case.

11         In element number five, are the damages sustained

12  buy Plaintiff as a result of Defendant's acts?  Well,

13  Plaintiff, then, as now, had their claim against the sellers.

14  They have the opportunity to collect if, in fact, there is the

15  money.  We don't take a position on that.  Obviously, the

16  Plaintiff and the seller defendants have dramatically

17  different views of this case.

18         In terms of intent, in 2003 the buyer defendants

19  undertook hundreds of thousands of dollars in payments for a

20  property that they did not have title to.  There was

21  significant risk on their part when they did that.  They did

22  it because they felt it was a good business deal.  They didn't

23  enter into this with the intent of a broker not being paid.

24         More importantly, by Plaintiffs' own admission, if

25  there was a functional closing in 2003, we brought the claim

1  six years earlier.  So how did we damage the plaintiff in any

2  way by allowing their commission, based upon their position,

3  to accrue six years earlier.

4          There's something a little more troubling; and that

5  is, in the June 28th, 2010, although I believe they were

6  speaking about the events of 2006, which we'll get to in a

7  moment, when we're speaking about certain transfers that

8  happened, "In addition to getting them tactically what they

9  wanted" -- and I'm quoting from the plaintiffs' counsel -- "In

10 addition to getting them tactically what they wanted, which

11 part of which was, you know, to keep the Department of Health

12 from stepping in and shutting this deal down, which probably

13 would have hurt my client in the long run if they did that."

14         There's something that subessential to this whole

15 case.  My clients did whatever they could to keep this deal

16 alive; arguably, for their own personal gain.  However, if

17 they hadn't keep the deal alive, it would have been to the

18 detriment of the broker as well.  Because no deal, for sure no

19 commission.  Now there's a closing, maybe there's a

20 commission, maybe there's not.

21         So from the prospective of the buyers, everything

22 that they did in order to facilitate this transaction to keep

23 the deal alive, to keep it going through these many years,

24 was, in fact, by Plaintiffs' own admission, a benefit to them.

25         When we brought our initial papers for the 12(b)(6)

1  motion, suddenly, in the opposition, we started hearing about

2  the events of 2006.  And now we move from 2003 to 2006.  And I

3  point this out only because of the 12(b)(6) itself, if it's

4  not in the complaint, we should be entitled to a 12(b)(6).

5          The reason I'm going through all this and addressing

6  that which Plaintiffs said in their papers is because I

7  believe that the 12(b)(6) should be issued.  I think we should

8  win.  I think it should be dismissed with prejudice and I also

9  think we're entitled to sanctions, but I'm going to go through

10 what happened in 2006 as well.

11         In 2006, there were a number of transfers that

12 occurred.  When the initial buyers saw that they weren't

13 getting approval from DOH, they brought in another buyer.

14 Now, they did not change the entity that was buying the

15 property at that point, or buying the lease of the facility.

16 What they did is, they sold their interest in the LLC to

17 another individual.

18         We wonder how a breach of contract as Plaintiff

19 claims against the seller's interest, how a breach of contract

20 occurs in 2003 but the tortuous interference occurs in 2006.

21 It's just something that leaves me in utter amazement.

22         Even if that were the case, we then go to a

23 question, if the title changed, as they claim, in 2003, why

24 would they be entitled to a new commission in 2006?  Do they

25 have a contract that's successive that changes ownership in

1    the property?  Are they a broker in perpetuity?

2            The points that were made earlier about both

3    tortuous interference and while, at that point, there would be

4    no statute of limitations, arguably, that was brought in, we

5    also state the same thing.  Where is their intent?  In fact,

6    that's where the quote came in where plaintiffs' counsel said

7    that, in fact, keeping the old law accrued to their benefit.

8            Now we move to 2009 when there actually was a

9    closing.  In the opposition papers, the plaintiff has now come

10   up, we have proof that the buyer's defendants -- the buyer

11   defendants had a duty, somehow, to make sure they were paid.

12           Although, and the purchase agreement specifically

13   sets forth the parties represent to each other -- again, that

14   was between the seller and the broker -- the parties represent

15   to each other -- I'm sorry, Your Honor, the purchase agreement

16   was between the buyers and sellers.

17           The purchase agreement specifically sets forth, "The

18   parties represent to each other that they have dealt with no

19   broker or finder with respect to this agreement except for" --

20   the plaintiff in this case.

21           "The seller and broker have entered into a separate

22   agreement pursuant to which seller shall be obligated to pay

23   the broker the brokers fees in relationship to this

24   transaction."

25           In the opposition papers, Plaintiff claims, there

1    was no lawful excuse for the Baywood defendants, being the

2    buyer defendants, to not pay Prestige what was agreed to in

3    the purchase agreement or to at least escrow same?  They've

4    come up with this new duty, there's no legal or lawful excuse?

5    We had no duty.

6            In fact, Your Honor questioned this in our hearing

7    of June 28, 2010.  And counsel for the plaintiff said there is

8    no contract with the buyers.  And therefore, the Court

9    properly concluded they have no legal obligation to pay their

10   clients.  That's page 11 of the transcript from June 10.

11           The fact remains that there is no duty, and

12   plaintiff has tried its various iterations of coming up with

13   some type of argument to bring Plaintiffs into this.  First

14   they said it was 2003.  When that didn't work, they said it

15   was 2006.  When that didn't work, they said it was 2009.

16           They rely on one case to somehow create this duty.

17   Unfortunately, that case stands for everything other than our

18   case.  They quote to the Bureau's case, it's a First

19   Department case from 1965.  And they quote it -- although I

20   normally don't give their side before I give mine, but they

21   quote it for the following proposition:

22           "Although a proposed purchaser does not undertake to

23   pay the commission, he may be liable for consequential damages

24   by reason of the breach of his contract with the broker, which

25   damages including compensation for the deprivation of the

1  commission the broker would have been paid by the owner of the

2  property."

3            That sounds like a wonderful quote.  It sounds like

4  it would create some kind of duty.  The problem is that that

5  case is so dramatically different from the case here that I

6  think that even citing to that case, essentially -- the case

7  there was where the buyers went out and hired the broker.  The

8  buyers got into a contract with the broker.

9            Then, as the year progressed, the responsibility to

10 pay was shifted from the buyer to the seller.  The buyer

11 backed out of the deal for no apparent real excuse.  So the

12 Court reasoned, they said, look, you buyers went out and hired

13 a broker, you signed a contract with the broker.  The fact

14 that you shifted the fee agreement and then you went through

15 default, you buyers went and defaulted on the deal, well, you

16 know something, there may be some responsibility there.

17            In this case, it's seller who hired the broker.  It

18 was always understood, there's been nothing contrary in this

19 case that it's the seller that's responsible to pay the

20 brokerage.  And in fact, the deal concluded.

21            So that one case was an exact opposite fact pattern

22 to our case.  There is no duty on the part of the buyers to

23 pay brokers, despite everything they said in their papers.

24 There just isn't.

25            Then we get to unjust enrichment, which arguably,

1    there's case law going back forth that it's a three-year

2    statute, a six-year statute.  But even if we operate that

3    under New York Law the defendant must have received the

4    benefit at the plaintiffs' expense.  Now, we don't see where

5    we got the benefit.  We paid for that which we got.  It wasn't

6    at the expense of the plaintiff.

7         Maybe the seller had to pay them, maybe the seller

8    didn't have to pay them.  That's for them to work out, for the

9    Court to decide.  However, it wasn't at our expense.  I'm

10   sorry, it wasn't -- our benefit was not at the plaintiffs'

11   expense, we paid.

12        The law is that the plaintiff must show that the

13   defendant either unjustly retained the benefit to the loss of

14   the plaintiff or retained money or property of plaintiff

15   against the fundamental principles of justice or equity.

16        There is no reason for us to have done that which in

17   the opposition papers the plaintiff would like to present to

18   this Court.  There's no authority for it.  It's not the way

19   deals are done.  Sellers pay brokers.  And as the Court

20   pointed out when we were here last time, had we not paid the

21   sellers, then there would have been no obligation to pay the

22   brokers.

23        We believe that the plaintiff has twisted and turned

24   every way they can, when what was in the complaint didn't

25   work, they came up with two different time frames.  Neither of

1  which had a basis in fact or basis in law.  And frankly, as I

2  said before, I don't know why we're here.

3          And that is the reason why we request sanctions.  We

4  should not have been called in in the first place.  There is

5  no basis for it, and this is exactly why sanctions are

6  assessed.

7          It stems from the rules of the New York chief

8  administrative judge.  "And the Court," as they say, "Will

9  look whether the conduct was completely without merit in law

10  and cannot be supported by a reasonable argument for an

11  extension, modification or reversal of existing law, the

12  conduct was undertaken primarily to prolong the resolution of

13  a litigation or harass or maliciously injure another or

14  assertions of material factual statements that are false."

15          Under the federal rules, Rule 11, "Certifications

16  are by the attorney, to the best of their information and

17  belief; the pleadings are well-grounded in fact and warranted

18  by existing law."

19          There's been a substantial amount of law that has

20  been presented to the Court that is simply not on point.  We

21  do not have any articulation of any reason why my clients are

22  here.  Accordingly, we ask that the 12(b)(6) motion be granted

23  with prejudice and that we be awarded sanctions.

24          Thank you.

25          THE COURT:  Thank you, Mr. Zilberberg.

1          Do you wish to be heard on opposition?

2          MR. BONFIGLIO:  I do, Your Honor.

3          I will begin by noting that our 38-page complaint

4    did not err on the side of brevity.  And although

5    Mr. Zilberberg would have this Court believe that we only

6    mentioned in our complaint the events of 2003, in actuality,

7    the complaint included not only paragraphs describing what

8    took place in 2003 and 2006, but all of the documents that

9    were referred to.

10          It was pled in a style of continuum to show what

11   happened from the day Plaintiff was first retained by the

12   seller defendants to market and ultimately sell this business

13   in Staten Island through the time when the complaint was

14   filed.  By which time, the buyer defendants had, for about six

15   years, effective possession of and control over all the assets

16   that they had contracted to buy and were, in fact, paying for

17   them, but still hadn't had a formal closing.

18          But those are just the skeletal facts of the case.

19   The claims that were brought against the respective sets of

20   defendants were articulated.  We don't have to go into

21   Henderson Hill anymore, but they are breach of contract and

22   standard commercial claims.

23          What we did not sue the buyer defendants for was

24   breach of contract or breach of duty, which seems to be the

25   red herring here.  We never alleged that they had a duty to

1   see that our broker fees got paid.  We sued them for tortuous

2   interference with contract.

3           And that contract is a contract between Prestige and

4   the seller defendants.  It's a contract to be compensated, and

5   that's part of the complaint.  Both briefs cite the applicable

6   court of appeals cases in New York that describe what the

7   elements of that cause of action are.  And neither, neither,

8   set of cases that were relied on makes any mention of the

9   existence of a duty.

10          What is mentioned in these cases, and what is most

11  important, is that one of the elements, after establishing

12  that there is a contract, which, clearly, was established in

13  the complaint, and it's been acknowledged by counsel here in

14  his argument, and the defendants' knowledge of that contract,

15  which is also admitted.  And even if it wasn't admitted, that

16  contract was expressly referred to in the purchase agreement

17  that was entered into by the buyer and a seller defendants in

18  February of 2003.

19          But the next element, which New York adapted from

20  the restatement, provides that "One who intentionally and

21  improperly interferes with the performance of a contract,

22  except the contract in merit, between another and a third

23  person by inducing or otherwise causing the third person not

24  to perform the contract," and that is what is at the essence

25  of our complaint against the buyer defendants are.

1          After February of '03, when the parties entered into

2    this purchase agreement and identified what was to be sold and

3    how much was to be paid for, the deal did not stop there and

4    it did not close in a conventional fashion.

5          In June of '03, the parties arranged, between

6    themselves, to basically give the buyer defendants the benefit

7    of what they were bargaining for, which is possession and

8    control of the assets that they wanted in exchange for the

9    commencement of payments to the seller defendants, which is

10   what they wanted.

11         There was one missing ingredient; and that is, the

12   approval of the New York State Department of Health.  We argue

13   that vis-a-vis the seller defendants, that was sufficient to

14   earn Prestige its commission.  Because under applicable

15   decisional law and tax law in New York State, everything that

16   was required for a "sale" to take place had taken place:

17   There was a transfer of possession in exchange for

18   consideration.

19         But we did not stop there, and were alleged that is

20   the point in time when the buyer defendants enabled the seller

21   defendant to breach the contract.  They certainly did help,

22   but what actually happened is that at that juncture in time,

23   and as is included in the complaint and supported with an

24   exhibit, money was escrowed as a token that the fee due and

25   owing the plaintiff was going to be paid when the formal

1 closing took place.

2        What makes the buyer defendants culpable is that, in

3 June of 2006 a series of transactions were entered into which

4 did several things.  The first thing is that it brought a new

5 player into the game in the person of Mr. Stern.  And this was

6 effectuated through a transfer of the ownership interest of

7 Mr. Beir and Scharf in the Baywood entity to Mr. Stern.

8        There is nothing unremarkable about that, but it

9 does have significance in terms of the original deal that was

10 made.  Because in the original purchase agreement, it says in

11 Paragraph 11 that if there is a change in the majority

12 ownership of the entity that was buying these assets, which,

13 at that time, was Island Manor and then Baywood came to be

14 substituted, but if there is a change of ownership, of a

15 majority of the ownership, then the full contract price is due

16 and owing at that time.

17        That gave the seller defendants the unfettered right

18 to then claim the sales proceeds.  And certainly, it would

19 have enabled Prestige to collect its fee.  However, that

20 provision went on to say that the seller defendants could

21 agree to any other terms that they wished to.  But that's

22 something that they didn't have to do.  It's something they

23 could do if they so chose.  It shouldn't operate the prejudice

24 plaintiffs claim to its commission because this is something

25 that's done as an accommodation for the buyers.

1          But that's kind of the point, all of these

2    agreements operate to the benefit of the buyers.  The 2003

3    agreements and the 2006 agreements all ultimately enable the

4    buyer defendants to either secure or continue to have

5    possession of these assets by paying the seller defendants.

6    But it's now operating to prejudice Prestige who brought this

7    deal about and is watching the deal be consummated, but

8    doesn't get what it bargained for even though the buyer

9    defendants know they're supposed to be paid.

10          Two other things happened in 2006.  The deal itself

11   was changed because in the amended purchase agreement there is

12   now a provision for monthly payments that were kicked up from

13   $71,000 a month to $100,000 a month, and there's a side

14   agreement entered into by Mr. Stern and Mr. Sirangelo

15   providing for an additional $30,000 a month.

16          Those two agreement, both of which expressly

17   referred to the purchase agreement, which, in turn, refers to

18   the exclusive listening agreement, effectively amended the

19   purchase agreement and increased the purchase price.  In so

20   doing, it revised that agreement and those changes were made

21   in January of 2006; and that's within the three-year ambit of

22   the statute of limitations on tortuous interference.

23          When they amended that agreement, and whose benefit

24   is it for?  The seller gets more money in order to give the

25   buyer more time to get whatever approvals it needed to to

1    formally close the deal.  But these agreements operate through

2    the benefits of these buyer defendants and to the detriment of

3    Prestige who's still sitting there waiting to be paid for a

4    deal they put together in '03.

5            All of these agreements are plead very precisely.

6    And their purpose and effect in bringing about what happened

7    here are all laid out in detail in the complaint.  It's not a

8    one paragraph conclusory blurb.  These documents are

9    identified, and they're cumulative effect is mentioned in the

10   complaint to show how each of these elements of the cause of

11   action of tortuous interference line up.

12           Interestingly, and discovered only after the

13   complaint was filed, is that despite having been sued for

14   tortuous interference or unjust enrichment, the buyer

15   defendants actually attended a formal closing of title on the

16   sale of these assets in June of 2009, three months after this

17   action was commenced, and alleged that they paid all of the

18   sales consideration to the seller defendants without

19   escrowing.

20           I know the issue there is no duty to do that, but

21   you are now being sued for interfering with this contract.

22   One might expect that if you were being sued for that, you

23   would at least segregate that part of the assets which

24   constitute the fee.  But see, this is typical of the way the

25   buyer defendants have comported themselves from the get go.

1  Yes, they have a pecuniary interest in getting what they want.

2  That, to the best of my knowledge, is not an actionable

3  offense in the United States.

4         What is actionable is when they arrange their

5  business matters in a way that it interferes with the

6  contractual rights of someone else.  In this case, that's what

7  we have shown.

8         Prestige brought these parties together.  Prestige

9  got the deal done and got it in a commercially enforceable and

10 viable manner.  Then the defendants, both sets of them, went

11 about altering the deal in a manner that still gave both sides

12 what they wanted but froze out the plaintiff.

13        That's what is not right, that is what is tortuous

14 and that is why these defendants were brought in, and should

15 stay it.  It is not necessary that the acts of the buyer

16 defendants be the sole reason why the seller defendants

17 breached their contract.  They only have to be part of the

18 reason.  They are part of the reason.  They are enablers.

19        They, by choosing to orchestrate their affairs in

20 the manner in which they did, and paying the funds in the

21 manner in which they did enabled the seller to continue to not

22 pay Prestige.  That is where the tort is.  That is what we

23 have complained of.

24        As far as the unjust enrichment claim is concerned,

25 I ask the Court now to switch its head from sitting in law to

1    sitting in equity.  Hamlet said there's something rotten in

2    Denmark.  I say it's in Brooklyn, Your Honor.  These guys knew

3    what they were doing and they orchestrated their affairs in a

4    manner where they knew they were freezing the plaintiff out.

5    That is not only unjust, it's inequitable.

6              This is not a situation where Prestige did a little

7    bit of work and the cast of characters changed over time and

8    there is really no basis for compensation.  All the work on

9    this deal was all done up front.  All that's happened over

10   time is some fresh funds were brought into the deal, but they

11   didn't abandon the old deal.

12             Every document that's ever been executed by the

13   parties since the execution of the purchase agreement

14   expressly refers to it, and amends it or modifies it in some

15   way and then preserves the rest of it right down to the fact

16   that when Stern came in, he didn't cancel that contract and

17   enter into a new deal with the sellers.

18             He bought the deal that was already in place and had

19   been preserved, by that time, for three years.  So when the

20   sellers or the buyers say that Stern bought the business, that

21   is not legally true, accurate or correct.

22             Baywood bought it.  Baywood was the assignee of

23   Island Manor, and whoever owned Baywood is irrelevant.

24   Baywood is the contracting party in contractual agreement by

25   substitution via the assignment.  Baywood is the entity into

1   which the bill of sale was produced after the action was

2   commenced.

3          Baywood got, ultimately, what it contracted for, and

4   paid, allegedly, all the -- we don't know what the total

5   consideration is.  Because although they admitted that

6   Mr. Stern paid the full amount required by the contract as

7   modified, the contract was modified to provide, at one point,

8   a formal closing, payment of a certain amount of cash, release

9   of the escrow and payment of notes.

10         Then, that came to be modified to release the

11  escrow, make an additional cash payment and commence paying

12  the notes.  Then, it was modified again to increase the amount

13  of notes, extend the terms of those notes.  So that, by our

14  calculation, neither which set of defendants have refuted in

15  any of their papers, moving or opposition, the sales

16  consideration went from roughly $9,000,000 to in excess of

17  $13,000,000.

18         And that happened in June of '06, Your Honor, which

19  is why we say that amendment was not just a facial amendment.

20  It was substantive in terms of driving the price up

21  substantially.  But all of this additional consideration was

22  agreed to.  Increasing the amount of Prestige's claim and the

23  expressed terms of the exclusive listing agreement today,

24  Prestige was to be paid from/of the proceeds of sale.

25         So in our view, included in the purchase price is an

1    amount of money that is due Prestige.  And done rightly, as

2    those funds are released, part of them belong to Prestige.

3    It's not about the duty that my adversary wishes to, first,

4    allege doesn't exist and then allege that because it doesn't

5    exist we're not entitled, we're simply talking about good

6    faith dealing with contract terms that are known to exist by

7    the parties to those agreements.

8          The defendants acknowledge, the buyer defendants

9    acknowledge they knew Prestige was to be paid.  But they did

10   nothing to enable that to happen, other than put money into

11   the sellers' hands.  And they knew from the correspondence

12   that was going on between and among the parties, the sellers

13   were not turning around and compensating Prestige.

14         But in the end, at the end of the day, the buyer

15   defendants now own, legally and beneficiary, all of the assets

16   that they contracted to buy.  And finished that deal at a time

17   when they were parties to this lawsuit and paid the

18   consideration that was called for by those agreements, which

19   are all mentioned in the complaints, and made no attempt or

20   provision to give to Prestige or escrow for Prestige that

21   which it claimed.

22         And in so doing, have now acquired this property

23   knowing that it was to Prestige's detriment to pay all of that

24   compensation when and in the manner that it did.  That is the

25   basis for our unjust enrichment plea.  It is not a matter of a

1   normal 30 or 90-day gap between contract and closing where the

2   parties just went in and applied for financing and showed up.

3           This is a deal that went on for years.  It was very

4   heavily marketed, as shown in the moving affidavits for our

5   injunctive relief.  Because we were in the dark and didn't

6   know that the closing took place until we were told after the

7   fact.  That's kind of what the problem is here.

8           We are not complaining that the buyer defendants

9   owed us a duty to see us get paid.  We simply said they have

10  an obligation not to interfere with our ability to get paid.

11  And when they organized their affairs in a manner in which it

12  is virtual certitude that by admitting to the sellers under

13  the circumstances that existed, that the plaintiff is not

14  going to get paid, they are enabling them to avoid their

15  contractual obligations to Prestige.

16          That is the basis for our claim.  And I don't know

17  if there's anything else to add to that, Your Honor.  It's all

18  in there in chronological order.

19          MR. ZILBERBERG:  Your Honor --

20          THE COURT:  I don't think I need anymore,

21  Mr. Zilberberg.  I have enough.

22          This has been a case that, I guess, is best

23  described as not seeing the forest for the trees.  There are

24  so many twists and convolutions in this case.  Putting aside

25  any issue -- and without deciding it -- putting aside any

1  issues with respect to statute of limitations, the motion can

2  be disposed of now as follows:

3              Mr. Bonfiglio has mentioned a couple of times, the

4  complaint is long and there are many agreements affixed to it

5  and incorporated by it, and therefore, before the Court on a

6  Rule 12(b)(6) motion just as much as the factual paragraphs of

7  the complaint itself, and are deemed to be as they are

8  represented to be.

9              One of those agreements is the listing agreement

10 which is really the essential agreement that controls the

11 result here.  There's absolutely nothing, absolutely nothing,

12 in the listing agreement that in anyway ties the hands of the

13 seller and its potential buyers as to what the terms of any

14 agreement between buyer and a seller would look like.

15             It provides for two possibilities in the listing

16 agreement.  And when I say possibilities, I mean with respect

17 to the possibility of the broker getting a fee.  One is that

18 there is somehow a transfer of ownership interest.  Doesn't

19 have to be a closing, doesn't say anything.  It just says a

20 transfer of ownership interest that is effective within the

21 terms of this -- of the -- pursuant to the initial services of

22 the broker that generates one kind of thinking.

23             Then there is another provision, a contingency

24 provision that basically deals with what happens if, at the

25 very last minute, all things being done, that the deal doesn't

1   close, the buyer pulls out, and then there's a different fee

2   arrangement that is provided for in the listing agreement.

3          But what's important here under the tortuous

4   interference claim, is that there is absolutely no allegation

5   that the buyer did anything other than to try to make a deal

6   with the seller, which is what essentially earns the broker,

7   potentially, a fee.

8          So there is no interference here.  This is the

9   fulfillment of what the listing agreement looked to.  There is

10  absolutely no evidence whatsoever of an allegation that

11  there's any -- that there's been any act by the buyers that

12  interferes with whatever right the broker may have under the

13  listing agreement to obtain a fee from the seller in the event

14  that whatever this deal is qualifies under the terms of the

15  listing agreement.

16         So that, again, regardless of what the acts are,

17  whether they fall within the statute or fall without the

18  statute of limitations, none of these alleged acts of the

19  defendant tortuously interfere with the -- with whatever

20  obligation the buyer or the sellers may have to pay a fee to

21  the broker.

22         It is absolutely clear, as well, and I didn't hear

23  anything in Mr. Bonfiglio's argument that even suggests to the

24  contrary that the listing agreement makes absolutely clear

25  that the broker is working only as the seller's agent, only.

1        So that, it doesn't even purport to provide a

2   service to the buyer.  He is purporting to only provide a

3   service to the seller.  So that with respect to the alleged

4   unlawful, unjust enrichment claim here, there is not unjust

5   enrichment vis-a-vis any service that the broker may have

6   provided to this deal.

7        The buyer never agreed or requested or received any

8   benefit from the broker.  So they weren't enriched because

9   somehow they had some sort of relationship with the broker

10  that got them the benefit that they didn't -- that hey had

11  contemplated paying for or perhaps may have had a contract to

12  pay for, and somehow the contract failed or, for whatever

13  reason, that there was any reasonable expectation by either

14  the broker or the buyer that the broker was ever providing a

15  service to the buyer.

16       So that, therefore, when the buyer receives the

17  service, and I'm sure there's the argument that the buyer

18  bought the business, but that's buying the product.  The

19  question was, was there also something else that was the

20  service of the broker.  But the buyer never was in a

21  relationship with the broker to receive a service from the

22  broker.  Not only were they not in that relationship, the

23  seller and the broker had agreed that the broker was working

24  for the seller and not the buyer.

25       So that, no one had any reasonable anticipation that

1    the buyer had any obligation whatever to the broker.  So that

2    there is no plausible claim for unjust enrichment.  As there

3    is no plausible claim for tortuous interference.  Because all

4    of the acts that the broker -- that the buyer took were acts

5    that were taken to execute on a deal.  And there was no

6    limitation in the listing agreement, either on the seller or

7    the broker, as to what those acts should be or what form the

8    contract that transfers ownership was to take.

9            They were both, the buyer and the seller, in an

10   unrestricted position to make that deal.  The question that's

11   ultimately left is that when the deal was done, was it a

12   transfer -- and this is a very language in the listing

13   agreement -- was it a transfer of ownership?  And did occur as

14   a result of negotiation that began at the time that the

15   contract was in play, and therefore, a fee of some sort is

16   owed.

17           That's why the seller defendants' motion to dismiss

18   was denied, because there are fact questions that ultimately

19   relate to that relationship.  There are no fact questions.

20   There are no allegations that plausibly state a claim for

21   tortuous interference or unjust enrichment as to the buyers.

22           So as to all of the buyer defendants, the motion to

23   dismiss with prejudice is granted.

24           On the motion for sanctions, to the extent that it

25   is properly before the Court, and it appears not to be, but to

1    the extent that it is properly before the Court, the Court

2    does not see a basis upon which sanctions should be granted

3    given the parameters of the facts here, and the argument as to

4    whether or not in this kind of transaction there ought to be

5    some sort of duty impressed upon the buyer.

6              To the extent that that argument is made, it's clear

7    to the Court that neither statutory or common law in New York

8    which controls this relationship, is there any basis for

9    extending the law to in anyway that would somehow impose upon

10   the buyer some sort of policeman's obligation to ensure that

11   the seller, the opposite party, the adversary party in this

12   contractual relationship, should comply with a contract that

13   the buyer has notice of but is not a party to.

14             So on that basis, the sanctions -- any motion for

15   sanctions properly before the Court is denied.  That is the

16   rule of the Court.  To the extent anyone needs a copy of the

17   reasons for it, the reporter will certainly provide an

18   opportunity for you to purchase it.

19             Is there anything further on this matter, this

20   matter being the motion to dismiss?

21             MR. BONFIGLIO:  No, Your Honor.

22             THE COURT:  None, all right.

23             I understand that the remaining defendants and the

24   plaintiff have an appearance before Magistrate Judge

25   Pohorelsky, which, I think, is to follow.  I don't want to

1  detain counsel or my brother judge from seeing you as soon as

2  you can get there.

3          MR. BONFIGLIO:  I have one procedural thing, Your

4  Honor.  You denied the 12(b)(6) motion for the seller

5  defendants back on June 28th, and I believe the ECF notice

6  went out on the 29th.  In my simple view of the world, that

7  gave them 30 days to answer the complaint but I don't have an

8  answer.

9          THE COURT:  To the extent that they need more time,

10  they have it.  We don't do trial by ambush here.  You're

11  before the magistrate judge.  If you need to arrange for the

12  scheduling of that, please do so.

13          MR. BONIFIGLIO:  Understood.

14          Thank you, Your Honor.

15          MR. ZILBERBERG:  Thank you, Your Honor.

16

17

18

19

20

21

22

23

24

25

| $ | 4 |
|---|---|
| **$100,000** [1] - 17:13 | **4** [1] - 1:9 |
| **$13,000,000** [1] - 21:17 | |
| **$30,000** [1] - 17:15 | **6** |
| **$71,000** [1] - 17:13 | |
| **$9,000,000** [1] - 21:16 | **6619** [2] - 1:19, 2:24 |

**'**

**'03** [3] - 15:1, 15:5, 18:4
**'06** [1] - 21:18

**0**

**09-CV-1357** [2] - 1:4, 2:15

**1**

**10** [1] - 9:10
**11** [3] - 9:10, 12:15, 16:11
**11201** [1] - 2:6
**11209** [1] - 1:16
**11219** [1] - 1:20
**12(b)(6** [8] - 3:24, 4:6, 6:25, 7:3, 7:7, 12:22, 24:6, 29:4
**12(b)(6)** [1] - 7:4
**121** [2] - 2:1, 3:7
**12207** [1] - 2:2
**1965** [1] - 9:19

**2**

**2003** [14] - 4:11, 4:12, 4:13, 4:21, 5:18, 5:25, 7:2, 7:20, 7:23, 9:14, 13:6, 13:8, 14:18, 17:2
**2006** [12] - 6:6, 7:2, 7:10, 7:11, 7:20, 7:24, 9:15, 13:8, 16:3, 17:3, 17:10, 17:21
**2009** [3] - 8:8, 9:15, 18:16
**2010** [3] - 1:9, 6:5, 9:7
**225** [1] - 2:5
**238** [2] - 1:15, 2:19
**28** [1] - 9:7
**28th** [2] - 6:5, 29:5
**29th** [1] - 29:6
**2:30** [1] - 1:9

**3**

**30** [2] - 23:1, 29:7
**38-page** [1] - 13:3

**7**

**718-613-2647** [1] - 2:6

**9**

**90-day** [1] - 23:1
**92nd** [2] - 1:15, 2:19

**A**

**abandon** [1] - 20:11
**ability** [1] - 23:10
**absolutely** [6] - 24:11, 25:4, 25:10, 25:22, 25:24
**accommodation** [1] - 16:25
**accordingly** [1] - 12:22
**accrue** [1] - 6:3
**accrued** [1] - 8:7
**accurate** [1] - 20:21
**acknowledge** [2] - 22:8, 22:9
**acknowledged** [1] - 14:13
**acquired** [1] - 22:22
**act** [1] - 25:11
**acting** [1] - 5:9
**action** [4] - 14:7, 18:11, 18:17, 21:1
**actionable** [2] - 19:2, 19:4
**acts** [8] - 4:11, 5:12, 19:15, 25:16, 25:18, 27:4, 27:7
**actuality** [1] - 13:6
**adapted** [1] - 14:19
**add** [2] - 3:22, 23:17
**addition** [2] - 6:8, 6:10
**additional** [3] - 17:15, 21:11, 21:21
**addressing** [1] - 7:5
**administrative** [1] - 12:8
**admission** [3] - 3:14, 5:24, 6:24
**admitted** [2] - 14:15, 21:5
**admitting** [1] - 23:12
**Adult** [1] - 2:14
**ADULT** [1] - 1:6
**adversary** [2] - 22:3, 28:11
**affairs** [3] - 19:19, 20:3, 23:11
**affects** [1] - 3:17
**affidavits** [1] - 23:4
**affixed** [1] - 24:4
**afternoon** [2] - 2:22, 2:23
**agent** [1] - 25:25

**agree** [2] - 5:6, 16:21
**agreed** [4] - 9:2, 21:22, 26:7, 26:23
**agreement** [34] - 4:13, 8:12, 8:15, 8:17, 8:19, 8:22, 9:3, 10:14, 14:16, 15:2, 16:10, 17:11, 17:14, 17:16, 17:17, 17:18, 17:19, 17:20, 17:23, 20:13, 20:24, 21:23, 24:9, 24:10, 24:12, 24:14, 24:16, 25:2, 25:9, 25:13, 25:15, 25:24, 27:6, 27:13
**agreements** [9] - 17:2, 17:3, 18:1, 18:5, 22:7, 22:18, 24:4, 24:9
**AL** [1] - 1:7
**Albany** [2] - 2:2, 3:8
**alive** [3] - 6:16, 6:17, 6:23
**allegation** [2] - 25:4, 25:10
**allegations** [1] - 27:20
**allege** [2] - 22:4
**alleged** [5] - 13:25, 15:19, 18:17, 25:18, 26:3
**allegedly** [1] - 21:4
**allowing** [1] - 6:2
**altering** [1] - 19:11
**amazement** [1] - 7:21
**ambit** [1] - 17:21
**ambush** [1] - 29:10
**amended** [3] - 17:11, 17:18, 17:23
**amendment** [1] - 21:19
**amends** [1] - 20:14
**amount** [6] - 12:19, 21:6, 21:8, 21:12, 21:22, 22:1
**Angelo** [1] - 3:8
**answer** [2] - 29:7, 29:8
**anticipation** [1] - 26:25
**anyway** [2] - 24:12, 28:9
**apparent** [1] - 10:11
**appeals** [1] - 14:6
**appearance** [2] - 3:15, 28:24
**APPEARANCES** [1] - 1:14
**appearances** [1] - 2:17
**applicable** [2] - 14:5, 15:14
**applied** [1] - 23:2
**approval** [2] - 7:13, 15:12
**approvals** [1] - 17:25
**arguably** [5] - 5:4, 5:5, 6:16, 8:4, 10:25
**argue** [1] - 15:12
**argument** [8] - 2:16, 9:13, 12:10, 14:14, 15:23, 26:17, 28:3, 28:6
**arrange** [2] - 19:4, 29:11
**arranged** [1] - 15:5
**arrangement** [1] - 25:2
**articulated** [2] - 3:25, 13:20
**articulation** [1] - 12:21
**aside** [2] - 23:24, 23:25
**assertions** [1] - 12:14
**assessed** [1] - 12:6
**assets** [7] - 13:15, 15:8, 16:12, 17:5, 18:16, 18:23, 22:15
**assignee** [1] - 20:22
**assignment** [1] - 20:25

**Assisted** [2] - 2:9, 2:14
**ASSISTED** [1] - 1:7
**ASSOCIATES** [1] - 1:19
**Atlantic** [1] - 3:25
**attempt** [1] - 22:19
**attended** [1] - 18:15
**attorney** [1] - 12:16
**attorneys** [1] - 2:17
**August** [1] - 1:9
**authority** [1] - 11:18
**Avenue** [2] - 1:19, 2:25
**avoid** [1] - 23:14
**awaiting** [1] - 3:14
**awarded** [1] - 12:23

**B**

**backed** [1] - 10:11
**bargained** [1] - 17:8
**bargaining** [2] - 5:9, 15:7
**barred** [1] - 4:25
**based** [1] - 6:2
**basis** [9] - 12:1, 12:5, 20:8, 22:25, 23:16, 28:2, 28:8, 28:14
**baywood** [2] - 20:24, 20:25
**Baywood** [8] - 3:1, 9:1, 16:7, 16:13, 20:22, 20:23, 21:3
**Beer** [1] - 3:1
**BEFORE** [1] - 1:10
**began** [1] - 27:14
**begin** [1] - 13:3
**beginning** [1] - 2:18
**behalf** [2] - 2:20, 2:25
**Beir** [1] - 16:7
**belief** [1] - 12:17
**Bell** [1] - 3:25
**belong** [1] - 22:2
**beneficiary** [1] - 22:15
**benefit** [11] - 6:24, 8:7, 11:4, 11:5, 11:10, 11:13, 15:6, 17:2, 17:23, 26:8, 26:10
**benefits** [1] - 18:2
**best** [4] - 3:24, 12:16, 19:2, 23:22
**between** [9] - 5:3, 8:14, 8:16, 14:3, 14:22, 15:5, 22:12, 23:1, 24:14
**bill** [1] - 21:1
**bit** [1] - 20:7
**blurb** [1] - 18:8
**Bonfiglio** [2] - 2:19, 24:3
**BONFIGLIO** [5] - 1:15, 2:19, 13:2, 28:21, 29:3
**Bonfiglio's** [1] - 25:23
**BONIFIGLIO** [1] - 29:13
**bought** [4] - 20:18, 20:20, 20:22, 26:18
**breach** [7] - 7:18, 7:19, 9:24, 13:21, 13:24, 15:21
**breached** [1] - 19:17
**brevity** [1] - 13:4
**briefs** [1] - 14:5

**bring** [1] - 9:13
**bringing** [1] - 18:6
**broker** [35] - 3:19, 5:23, 6:18, 8:1, 8:14, 8:19, 8:21, 8:23, 9:24, 10:1, 10:7, 10:8, 10:13, 10:17, 14:1, 24:17, 24:22, 25:6, 25:12, 25:21, 25:25, 26:5, 26:8, 26:9, 26:14, 26:20, 26:21, 26:22, 26:23, 27:1, 27:4, 27:7
**broker's** [1] - 3:20
**brokerage** [1] - 10:20
**brokers** [4] - 8:23, 10:23, 11:19, 11:22
**Brooklyn** [7] - 1:6, 1:16, 1:20, 2:6, 2:20, 2:25, 20:2
**brother** [1] - 29:1
**brought** [12] - 4:6, 4:8, 5:25, 6:25, 7:13, 8:4, 13:19, 16:4, 17:6, 19:8, 19:14, 20:10
**Bureau's** [1] - 9:18
**business** [6] - 5:10, 5:22, 13:12, 19:5, 20:20, 26:18
**buy** [3] - 5:12, 13:16, 22:16
**buyer** [43] - 4:10, 5:18, 7:13, 8:10, 9:2, 10:10, 13:14, 13:23, 14:17, 14:25, 15:6, 15:20, 16:2, 17:4, 17:8, 17:25, 18:2, 18:14, 18:25, 19:15, 22:8, 22:14, 23:8, 24:14, 25:1, 25:5, 25:20, 26:2, 26:7, 26:14, 26:15, 26:16, 26:17, 26:20, 26:24, 27:1, 27:4, 27:9, 27:22, 28:5, 28:10, 28:13
**buyer's** [2] - 3:21, 8:10
**buyers** [17] - 3:17, 3:19, 6:21, 7:12, 8:16, 9:8, 10:7, 10:8, 10:12, 10:15, 10:22, 16:25, 17:2, 20:20, 24:13, 25:11, 27:21
**buying** [4] - 7:14, 7:15, 16:12, 26:18
**BY** [2] - 1:20, 2:2

**C**

**Cadman** [1] - 2:5
**calculation** [1] - 21:14
**calendar** [1] - 2:13
**cancel** [1] - 20:16
**cannot** [1] - 12:10
**case** [28] - 2:13, 2:15, 3:25, 4:9, 4:22, 5:10, 5:17, 6:15, 7:22, 8:20, 9:16, 9:17, 9:18, 9:19, 10:5, 10:6, 10:17, 10:19, 10:21, 10:22, 11:1, 13:18, 19:6, 23:22, 23:24
**cases** [3] - 14:6, 14:8, 14:10
**cash** [2] - 21:8, 21:11
**cast** [1] - 20:7
**causing** [1] - 14:23
**certain** [2] - 6:7, 21:8
**certainly** [4] - 3:16, 15:21, 16:18, 28:17
**Certifications** [1] - 12:15
**certitude** [1] - 23:12
**change** [3] - 7:14, 16:11, 16:14

**changed** [4] - 4:15, 7:23, 17:11, 20:7
**changes** [2] - 7:25, 17:20
**characters** [1] - 20:7
**Charles** [1] - 3:1
**chief** [1] - 12:7
**choosing** [1] - 19:19
**chose** [1] - 16:23
**chronological** [1] - 23:18
**Cilio** [1] - 3:9
**circumstances** [1] - 23:13
**cite** [1] - 14:5
**cited** [2] - 4:16, 4:22
**citing** [1] - 10:6
**claim** [15] - 4:3, 4:10, 5:13, 5:25, 7:23, 16:18, 16:24, 19:24, 21:22, 23:16, 25:4, 26:4, 27:2, 27:3, 27:20
**claimed** [1] - 22:21
**claims** [4] - 7:19, 8:25, 13:19, 13:22
**clear** [4] - 4:22, 25:22, 25:24, 28:6
**clearly** [2] - 5:7, 14:12
**CLERK** [1] - 2:13
**client** [1] - 6:13
**clients** [3] - 6:15, 9:10, 12:21
**close** [3] - 15:4, 18:1, 25:1
**closing** [12] - 4:15, 4:18, 5:25, 6:19, 8:9, 13:17, 16:1, 18:15, 21:8, 23:1, 23:6, 24:19
**collect** [2] - 5:14, 16:19
**coming** [1] - 9:12
**commence** [1] - 21:11
**commenced** [2] - 18:17, 21:2
**commencement** [1] - 15:9
**commercial** [1] - 13:22
**commercially** [1] - 19:9
**commission** [8] - 6:2, 6:19, 6:20, 7:24, 9:23, 10:1, 15:14, 16:24
**committed** [1] - 4:25
**common** [1] - 28:7
**compensated** [1] - 14:4
**compensating** [1] - 22:13
**compensation** [3] - 9:25, 20:8, 22:24
**complained** [1] - 19:23
**complaining** [1] - 23:8
**complaint** [18] - 4:10, 4:14, 7:4, 11:24, 13:3, 13:6, 13:7, 13:13, 14:5, 14:13, 14:25, 15:23, 18:7, 18:10, 18:13, 24:4, 24:7, 29:7
**complaints** [1] - 22:19
**complete** [1] - 3:11
**completely** [1] - 12:9
**comply** [1] - 28:12
**comported** [1] - 18:25
**Computer** [1] - 2:9
**Computer-Assisted** [1] - 2:9
**concerned** [1] - 19:24
**concluded** [2] - 9:9, 10:20
**conclusory** [1] - 18:8
**conduct** [2] - 12:9, 12:12
**consequential** [1] - 9:23

**consideration** [6] - 15:18, 18:18, 21:5, 21:16, 21:21, 22:18
**constitute** [1] - 18:24
**consummated** [1] - 17:7
**contemplated** [1] - 26:11
**contingency** [1] - 24:23
**continue** [2] - 17:4, 19:21
**continuing** [1] - 4:24
**continuum** [1] - 13:10
**contract** [35] - 5:3, 5:5, 7:18, 7:19, 7:25, 9:8, 9:24, 10:8, 10:13, 13:21, 13:24, 14:2, 14:3, 14:4, 14:12, 14:14, 14:16, 14:21, 14:22, 14:24, 15:21, 16:15, 18:21, 19:17, 20:16, 21:6, 21:7, 22:6, 23:1, 26:11, 26:12, 27:8, 27:15, 28:12
**contracted** [3] - 13:16, 21:3, 22:16
**contracting** [1] - 20:24
**contractual** [5] - 5:7, 19:6, 20:24, 23:15, 28:12
**contrary** [2] - 10:18, 25:24
**control** [2] - 13:15, 15:8
**controls** [2] - 24:10, 28:8
**conventional** [1] - 15:4
**convolutions** [1] - 23:24
**copy** [1] - 28:16
**correct** [1] - 20:21
**correspondence** [1] - 22:11
**counsel** [7] - 2:18, 3:18, 6:9, 8:6, 9:7, 14:13, 29:1
**couple** [1] - 24:3
**COURT** [10] - 1:1, 2:23, 3:2, 3:6, 3:11, 3:15, 12:25, 23:20, 28:22, 29:9
**Court** [17] - 2:5, 9:8, 10:12, 11:9, 11:18, 11:19, 12:8, 12:20, 13:5, 19:25, 24:5, 27:25, 28:1, 28:7, 28:15, 28:16
**court** [1] - 14:6
**Courthouse** [1] - 1:5
**create** [2] - 9:16, 10:4
**CRR** [1] - 2:5
**culpable** [1] - 16:2
**cumulative** [1] - 18:9

## D

**damage** [1] - 6:1
**damages** [4] - 4:12, 5:11, 9:23, 9:25
**Daniel** [1] - 3:1
**dark** [1] - 23:5
**David** [1] - 3:7
**DAVID** [1] - 2:2
**days** [1] - 29:7
**deal** [32] - 5:22, 6:12, 6:15, 6:17, 6:18, 6:23, 10:11, 10:15, 10:20, 15:3, 16:9, 17:7, 17:10, 18:1, 18:4, 18:9, 19:11, 20:9, 20:10, 20:11, 20:17, 20:18, 22:16, 23:3, 24:25, 25:5, 25:14, 26:6, 27:5, 27:10, 27:11
**dealing** [1] - 22:6

**deals** [2] - 11:19, 24:24
**dealt** [1] - 8:18
**decide** [1] - 11:9
**deciding** [1] - 23:25
**decisional** [1] - 15:15
**deemed** [1] - 24:7
**default** [1] - 10:15
**defaulted** [1] - 10:15
**Defendant** [2] - 1:19, 2:1
**defendant** [10] - 3:17, 3:18, 3:19, 3:21, 4:2, 11:3, 11:13, 15:21, 25:19
**defendant's** [1] - 5:5
**Defendant's** [1] - 5:12
**defendants** [41] - 4:10, 5:9, 5:16, 5:18, 8:10, 8:11, 9:1, 9:2, 13:12, 13:14, 13:20, 13:23, 14:4, 14:17, 14:25, 15:6, 15:9, 15:13, 15:20, 16:2, 16:17, 16:20, 17:4, 17:5, 17:9, 18:2, 18:15, 18:18, 18:25, 19:10, 19:14, 19:16, 21:14, 22:8, 22:15, 23:8, 27:22, 28:23, 29:5
**Defendants** [1] - 1:8
**defendants'** [3] - 5:6, 14:14, 27:17
**denied** [3] - 27:18, 28:15, 29:4
**Denmark** [1] - 20:2
**Department** [3] - 6:11, 9:19, 15:12
**deprivation** [1] - 9:25
**describe** [1] - 14:6
**described** [1] - 23:23
**describing** [1] - 13:7
**despite** [2] - 10:23, 18:13
**destruction** [1] - 5:7
**detail** [1] - 18:7
**detain** [1] - 29:1
**detriment** [3] - 6:18, 18:2, 22:23
**different** [4] - 5:17, 10:5, 11:25, 25:1
**disagreed** [1] - 4:17
**discovered** [1] - 18:12
**dismiss** [3] - 27:17, 27:23, 28:20
**dismissed** [1] - 7:8
**disposed** [1] - 24:2
**DISTRICT** [2] - 1:1, 1:1
**District** [1] - 1:12
**document** [1] - 20:12
**documents** [2] - 13:8, 18:8
**DOH** [1] - 7:13
**dollars** [1] - 5:19
**done** [8] - 11:16, 11:19, 16:25, 19:9, 20:9, 22:1, 24:25, 27:11
**down** [2] - 6:12, 20:15
**dramatically** [2] - 5:16, 10:5
**driving** [1] - 21:20
**due** [3] - 15:24, 16:15, 22:1
**duty** [14] - 8:11, 9:4, 9:5, 9:11, 9:16, 10:4, 10:22, 13:24, 13:25, 14:9, 18:20, 22:3, 23:9, 28:5

## E

**earn** [1] - 15:14

**earns** [1] - 25:6
**East** [1] - 2:5
**EASTERN** [1] - 1:1
**ECF** [1] - 29:5
**effect** [2] - 18:6, 18:9
**effective** [2] - 13:15, 24:20
**effectively** [1] - 17:18
**effectuated** [1] - 16:6
**either** [4] - 11:13, 17:4, 26:13, 27:6
**element** [2] - 5:11, 14:19
**elements** [4] - 5:3, 14:7, 14:11, 18:10
**Emma** [1] - 3:9
**enable** [2] - 17:3, 22:10
**enabled** [3] - 15:20, 16:19, 19:21
**enablers** [1] - 19:18
**enabling** [1] - 23:14
**end** [2] - 22:14
**enforceable** [1] - 19:9
**enriched** [1] - 26:8
**enrichment** [8] - 10:25, 18:14, 19:24, 22:25, 26:4, 26:5, 27:2, 27:21
**ensure** [1] - 28:10
**enter** [2] - 5:23, 20:17
**entered** [5] - 8:21, 14:17, 15:1, 16:3, 17:14
**entitled** [5] - 4:2, 7:4, 7:9, 7:24, 22:5
**entitlement** [1] - 4:7
**entity** [4] - 7:14, 16:7, 16:12, 20:25
**ENV** [1] - 1:4
**equity** [2] - 11:15, 20:1
**ERIC** [1] - 1:11
**err** [1] - 13:4
**escrow** [4] - 9:3, 21:9, 21:11, 22:20
**escrowed** [1] - 15:24
**escrowing** [1] - 18:19
**ESQ** [2] - 1:20, 1:21
**essence** [1] - 14:24
**essential** [1] - 24:10
**essentially** [2] - 10:6, 25:6
**established** [1] - 14:12
**establishing** [1] - 14:11
**ET** [1] - 1:7
**event** [2] - 4:20, 25:13
**events** [3] - 6:6, 7:2, 13:6
**evidence** [1] - 25:10
**exact** [1] - 10:21
**exactly** [1] - 12:5
**except** [2] - 8:19, 14:22
**excess** [1] - 21:16
**exchange** [2] - 15:8, 15:17
**exclusive** [1] - 17:18, 21:23
**excuse** [3] - 9:1, 9:4, 10:11
**execute** [1] - 27:5
**executed** [2] - 4:14, 20:12
**execution** [1] - 20:13
**exhibit** [1] - 15:24
**exist** [3] - 22:4, 22:5, 22:6
**existed** [1] - 23:13
**existence** [1] - 14:9

**existing** [2] - 12:11, 12:18
**expect** [2] - 3:20, 18:22
**expectation** [1] - 26:13
**expense** [4] - 11:4, 11:6, 11:9, 11:11
**expressed** [1] - 21:23
**expressly** [3] - 14:16, 17:16, 20:14
**extend** [1] - 21:13
**extending** [1] - 28:9
**extension** [1] - 12:11
**extent** [5] - 27:24, 28:1, 28:6, 28:16, 29:9

## F

**facial** [1] - 21:19
**facilitate** [1] - 6:22
**facility** [1] - 7:15
**fact** [18] - 4:11, 4:20, 5:14, 6:24, 8:5, 8:7, 9:6, 9:11, 10:13, 10:20, 10:21, 12:1, 12:17, 13:16, 20:15, 23:7, 27:18, 27:19
**facts** [2] - 13:18, 28:3
**factual** [2] - 12:14, 24:6
**failed** [1] - 26:12
**fair** [1] - 4:3
**faith** [1] - 22:6
**fall** [2] - 25:17
**false** [1] - 12:14
**far** [1] - 19:24
**fashion** [1] - 15:4
**February** [2] - 14:18, 15:1
**federal** [1] - 12:15
**fee** [10] - 10:14, 15:24, 16:19, 18:24, 24:17, 25:1, 25:7, 25:13, 25:20, 27:15
**fees** [2] - 8:23, 14:1
**felt** [1] - 5:22
**filed** [2] - 13:14, 18:13
**financing** [1] - 23:2
**finder** [1] - 8:19
**finished** [1] - 22:16
**first** [5] - 9:13, 12:4, 13:11, 16:4, 22:3
**First** [1] - 9:18
**five** [1] - 5:11
**follow** [1] - 28:25
**following** [1] - 9:21
**follows** [1] - 24:2
**forest** [1] - 23:23
**form** [1] - 27:7
**formal** [4] - 13:17, 15:25, 18:15, 21:8
**formally** [1] - 18:1
**forth** [3] - 8:13, 8:17, 11:1
**frames** [1] - 11:25
**frankly** [1] - 12:1
**freezing** [1] - 20:4
**fresh** [1] - 20:10
**from/of** [1] - 21:24
**front** [1] - 20:9
**froze** [1] - 19:12
**fulfillment** [1] - 25:9

**full** [2] - 16:15, 21:6
**functional** [1] - 4:17, 5:25
**fundamental** [1] - 11:15
**funds** [3] - 19:20, 20:10, 22:2

## G

**gain** [1] - 6:16
**game** [1] - 16:5
**gap** [1] - 23:1
**generates** [1] - 24:22
**given** [1] - 28:3
**granted** [3] - 12:22, 27:23, 28:2
**ground** [1] - 4:3
**grounded** [1] - 12:17
**grounds** [1] - 4:7
**GROUP** [1] - 1:3
**Group** [3] - 1:15, 2:14, 2:21
**guess** [1] - 23:22
**guys** [1] - 20:2

## H

**Hamlet** [1] - 20:1
**hands** [2] - 22:11, 24:12
**harass** [1] - 12:13
**head** [1] - 19:25
**Health** [2] - 6:11, 15:12
**hear** [3] - 3:20, 5:4, 25:22
**heard** [1] - 13:1
**hearing** [2] - 7:1, 9:6
**heavily** [1] - 23:4
**help** [1] - 15:21
**Henderson** [4] - 2:1, 2:14, 3:8, 13:21
**hENDERSON** [1] - 1:6
**herring** [1] - 13:25
**Hill** [4] - 2:1, 2:14, 3:8, 13:21
**HILL** [1] - 1:6
**Hinman** [1] - 3:7
**HINMAN** [1] - 2:1
**hired** [3] - 10:7, 10:12, 10:17
**HOME** [1] - 1:6
**Home** [1] - 2:14
**Honor** [13] - 2:22, 3:23, 8:15, 9:6, 13:2, 20:2, 21:18, 23:17, 23:19, 28:21, 29:4, 29:14, 29:15
**HONORABLE** [1] - 1:11
**hundreds** [1] - 5:19
**hurt** [1] - 6:13

## I

**identified** [2] - 15:2, 18:9
**important** [2] - 14:11, 25:3
**importantly** [1] - 5:24
**impose** [1] - 28:9
**impressed** [1] - 28:5

**improperly** [1] - 14:21
**INC** [2] - 1:3, 1:7
**Inc** [1] - 2:14
**Inc.** [1] - 2:21
**included** [3] - 13:7, 15:23, 21:25
**including** [1] - 9:25
**incorporated** [1] - 24:5
**increase** [1] - 21:12
**increased** [1] - 17:19
**increasing** [1] - 21:22
**indication** [1] - 5:8
**individual** [1] - 7:17
**induce** [1] - 5:6
**inducing** [1] - 14:23
**inequitable** [1] - 20:5
**information** [1] - 12:16
**ingredient** [1] - 15:11
**initial** [3] - 6:25, 7:12, 24:21
**injunctive** [1] - 23:5
**injure** [1] - 12:13
**intent** [5] - 5:6, 5:8, 5:18, 5:23, 8:5
**intentionally** [1] - 14:20
**interest** [7] - 4:12, 7:16, 7:19, 16:6, 19:1, 24:18, 24:20
**interestingly** [1] - 18:12
**interfere** [2] - 23:10, 25:19
**interference** [12] - 4:20, 5:3, 7:20, 8:3, 14:2, 17:22, 18:11, 18:14, 25:4, 25:8, 27:3, 27:21
**interferes** [3] - 14:21, 19:5, 25:12
**interfering** [1] - 18:21
**irrelevant** [1] - 20:23
**Island** [5] - 1:19, 2:25, 13:13, 16:13, 20:23
**issue** [2] - 18:20, 23:25
**issued** [1] - 7:7
**issues** [1] - 24:1
**iterations** [1] - 9:12
**itself** [4] - 4:10, 7:3, 17:10, 24:7

## J

**January** [1] - 17:21
**Joseph** [1] - 3:9
**judge** [3] - 12:8, 29:1, 29:11
**Judge** [2] - 1:12, 28:24
**juncture** [1] - 15:22
**June** [8] - 6:5, 9:7, 9:10, 15:5, 16:3, 18:16, 21:18, 29:5
**justice** [1] - 11:15

## K

**keep** [5] - 6:11, 6:15, 6:17, 6:22, 6:23
**keeping** [1] - 8:7
**kicked** [1] - 17:12
**kind** [5] - 10:4, 17:1, 23:7, 24:22, 28:4
**knowing** [1] - 22:23

**knowledge** [3] - 5:5, 14:14, 19:2
**known** [1] - 22:6

## L

**laid** [1] - 18:7
**language** [1] - 27:12
**last** [2] - 11:20, 24:25
**Law** [2] - 4:16, 11:3
**law** [13] - 8:7, 11:1, 11:12, 12:1, 12:9, 12:11, 12:18, 12:19, 15:15, 19:25, 28:7, 28:9
**lawful** [2] - 9:1, 9:4
**lawsuit** [1] - 22:17
**lawyers** [2] - 3:21
**lease** [1] - 7:15
**least** [2] - 9:3, 18:23
**leaves** [1] - 7:21
**left** [1] - 27:11
**legal** [2] - 9:4, 9:9
**legally** [2] - 20:21, 22:15
**liable** [1] - 9:23
**limitation** [1] - 27:6
**limitations** [8] - 4:21, 4:23, 5:1, 5:2, 8:4, 17:22, 24:1, 25:18
**line** [1] - 18:11
**listening** [1] - 17:18
**listing** [11] - 21:23, 24:9, 24:12, 24:15, 25:2, 25:9, 25:13, 25:15, 25:24, 27:6, 27:12
**litigation** [1] - 12:13
**LIVING** [1] - 1:7
**Living** [1] - 2:15
**LLC** [1] - 7:16
**look** [3] - 10:12, 12:9, 24:14
**looked** [1] - 25:9
**loss** [1] - 11:13
**Luntz** [1] - 3:7
**LUNTZ** [2] - 2:2, 3:7

## M

**Magistrate** [1] - 28:24
**magistrate** [1] - 29:11
**majority** [2] - 16:11, 16:15
**maliciously** [1] - 12:13
**management** [1] - 4:13
**manner** [7] - 19:10, 19:11, 19:20, 19:21, 20:4, 22:24, 23:11
**Manor** [4] - 1:19, 3:1, 16:13, 20:23
**market** [1] - 13:12
**marketed** [1] - 23:4
**material** [1] - 12:14
**matter** [3] - 22:25, 28:19, 28:20
**matters** [1] - 19:5
**mean** [1] - 24:16
**meant** [1] - 4:17
**mechanical** [1] - 2:8

**MENDEL** [2] - 1:19, 1:20
**Mendel** [1] - 2:24
**mention** [1] - 14:8
**mentioned** [5] - 13:6, 14:10, 18:9, 22:19, 24:3
**merit** [2] - 12:9, 14:22
**might** [1] - 18:22
**mine** [1] - 9:20
**minute** [1] - 24:25
**missing** [1] - 15:11
**modification** [1] - 12:11
**modified** [4] - 21:7, 21:10, 21:12
**modifies** [1] - 20:14
**moment** [1] - 6:7
**money** [6] - 5:15, 11:14, 15:24, 17:24, 22:1, 22:10
**month** [3] - 17:13, 17:15
**monthly** [1] - 17:12
**months** [1] - 18:16
**Moskowitz** [1] - 3:13
**MOSKOWITZ** [1] - 1:21
**most** [1] - 14:10
**motion** [13] - 3:16, 3:24, 4:6, 7:1, 12:22, 24:1, 24:6, 27:17, 27:22, 27:24, 28:14, 28:20, 29:4
**move** [3] - 5:10, 7:2, 8:8
**moving** [2] - 21:15, 23:4
**MR** [12] - 2:19, 2:24, 3:4, 3:7, 3:13, 3:23, 13:2, 23:19, 28:21, 29:3, 29:13, 29:15
**must** [2] - 11:3, 11:12

## N

**N.Y** [1] - 1:6
**necessary** [1] - 19:15
**need** [3] - 23:20, 29:9, 29:11
**needed** [1] - 17:25
**needs** [1] - 28:16
**negotiation** [1] - 27:14
**never** [3] - 13:25, 26:7, 26:20
**new** [4] - 7:24, 9:4, 16:4, 20:17
**NEW** [1] - 1:1
**New** [15] - 1:16, 1:20, 2:2, 2:6, 2:20, 2:25, 3:8, 4:16, 11:3, 12:7, 14:6, 14:19, 15:12, 15:15, 28:7
**next** [1] - 14:19
**none** [2] - 25:18, 28:22
**normal** [1] - 23:1
**normally** [1] - 9:20
**note** [2] - 2:17, 3:15
**notes** [4] - 21:9, 21:12, 21:13
**nothing** [5] - 10:18, 16:8, 22:10, 24:11
**notice** [4] - 4:3, 28:13, 29:5
**noting** [1] - 13:3
**number** [3] - 2:15, 5:11, 7:11

## O

**obligated** [1] - 8:22
**obligation** [6] - 9:9, 11:21, 23:10, 25:20, 27:1, 28:10
**obligations** [1] - 23:15
**obtain** [1] - 25:13
**obviously** [2] - 4:16, 5:15
**occur** [1] - 27:13
**occurred** [2] - 4:20, 7:12
**occurs** [2] - 7:20
**OF** [1] - 1:1
**offense** [1] - 19:3
**office** [2] - 3:5, 3:13
**old** [2] - 8:7, 20:11
**One** [1] - 14:20
**one** [13] - 3:11, 9:16, 10:21, 14:11, 15:11, 18:8, 18:22, 21:7, 24:9, 24:17, 24:22, 26:25, 29:3
**operate** [4] - 11:2, 16:23, 17:2, 18:1
**operating** [1] - 17:6
**opportunity** [2] - 5:14, 28:18
**opposite** [2] - 10:21, 28:11
**opposition** [6] - 7:1, 8:9, 8:25, 11:17, 13:1, 21:15
**oral** [1] - 2:16
**orchestrate** [1] - 19:19
**orchestrated** [1] - 20:3
**order** [4] - 4:2, 6:22, 17:24, 23:18
**organized** [1] - 23:11
**original** [2] - 16:9, 16:10
**otherwise** [1] - 14:23
**ought** [1] - 28:4
**owed** [2] - 23:9, 27:16
**owing** [2] - 15:25, 16:16
**own** [5] - 5:9, 5:24, 6:16, 6:24, 22:15
**owned** [1] - 20:23
**owner** [1] - 10:1
**ownership** [9] - 7:25, 16:6, 16:12, 16:14, 16:15, 24:18, 24:20, 27:8, 27:13

## P

**P.C** [1] - 1:19
**p.m** [1] - 1:9
**page** [1] - 9:10
**paid** [20] - 5:23, 8:11, 10:1, 11:5, 11:11, 11:20, 14:1, 15:3, 15:25, 17:9, 18:3, 18:17, 21:4, 21:6, 21:24, 22:9, 22:17, 23:9, 23:10, 23:14
**papers** [11] - 3:16, 3:22, 4:16, 4:22, 6:25, 7:6, 8:9, 8:25, 10:23, 11:17, 21:15
**paragraph** [1] - 18:8
**Paragraph** [1] - 16:11
**paragraphs** [2] - 13:7, 24:6
**parameters** [1] - 28:3
**part** [9] - 5:8, 5:21, 6:11, 10:22, 14:5, 18:23, 19:17, 19:18, 22:2

**particular** [1] - 4:9
**parties** [11] - 8:13, 8:14, 8:18, 15:1, 15:5, 19:8, 20:13, 22:7, 22:12, 22:17, 23:2
**party** [5] - 5:4, 20:24, 28:11, 28:13
**pattern** [1] - 10:21
**Paul** [1] - 3:4
**PAUL** [1] - 1:21
**pay** [15] - 8:22, 9:2, 9:9, 9:23, 10:10, 10:19, 10:23, 11:7, 11:8, 11:19, 11:21, 19:22, 22:23, 25:20, 26:12
**paying** [5] - 13:16, 17:5, 19:20, 21:11, 26:11
**payment** [3] - 21:8, 21:9, 21:11
**payments** [3] - 5:19, 15:9, 17:12
**pecuniary** [1] - 19:1
**perform** [1] - 14:24
**performance** [1] - 14:21
**perhaps** [1] - 26:11
**perpetuity** [1] - 8:1
**person** [3] - 14:23, 16:5
**personal** [2] - 5:10, 6:16
**Philip** [1] - 3:9
**place** [7] - 12:4, 13:8, 15:16, 16:1, 20:18, 23:6
**plain** [1] - 4:1
**plaintiff** [19] - 2:20, 4:6, 5:4, 6:1, 8:9, 8:20, 9:7, 9:12, 11:6, 11:12, 11:14, 11:17, 11:23, 15:25, 19:12, 20:4, 23:13, 28:24
**Plaintiff** [8] - 1:4, 1:15, 5:12, 5:13, 5:16, 7:18, 8:25, 13:11
**plaintiffs** [1] - 16:24
**Plaintiffs** [3] - 4:1, 7:6, 9:13
**plaintiffs'** [4] - 6:9, 8:6, 11:4, 11:10
**Plaintiffs'** [4] - 2:18, 4:14, 5:24, 6:24
**plausible** [2] - 27:2, 27:3
**plausibly** [1] - 27:20
**play** [1] - 27:15
**player** [1] - 16:5
**Plaza** [1] - 2:5
**plea** [1] - 22:25
**plead** [1] - 18:5
**pleader** [1] - 4:2
**pleadings** [1] - 12:17
**pled** [1] - 13:10
**Pohorelsky** [1] - 28:25
**point** [7] - 7:3, 7:15, 8:3, 12:20, 15:20, 17:1, 21:7
**pointed** [1] - 11:20
**points** [1] - 8:2
**policeman's** [1] - 28:10
**position** [4] - 4:14, 5:15, 6:2, 27:10
**possession** [4] - 13:15, 15:7, 15:17, 17:5
**possibilities** [2] - 24:15, 24:16
**possibility** [1] - 24:17
**potential** [1] - 24:13
**potentially** [1] - 25:7

**precisely** [1] - 18:5
**prejudice** [5] - 7:8, 12:23, 16:23, 17:6, 27:23
**present** [2] - 3:3, 11:17
**presented** [1] - 12:20
**preserved** [1] - 20:19
**preserves** [1] - 20:15
**PRESTIGE** [1] - 1:3
**prestige** [1] - 19:8
**Prestige** [20] - 1:15, 2:13, 2:21, 9:2, 14:3, 15:14, 16:19, 17:6, 18:3, 19:8, 19:22, 20:6, 21:24, 22:1, 22:2, 22:9, 22:13, 22:20, 23:15
**Prestige's** [2] - 21:22, 22:23
**price** [4] - 16:15, 17:19, 21:20, 21:25
**primarily** [1] - 12:12
**principles** [1] - 11:15
**problem** [3] - 4:19, 10:4, 23:7
**procedural** [1] - 29:3
**Proceedings** [1] - 2:8
**proceeds** [2] - 16:18, 21:24
**produced** [2] - 2:9, 21:1
**product** [1] - 26:18
**PROGRAM** [1] - 1:7
**Program** [1] - 2:15
**progressed** [1] - 10:9
**prolong** [1] - 12:12
**proof** [1] - 8:10
**properly** [4] - 9:9, 27:25, 28:1, 28:15
**property** [6] - 5:20, 7:15, 8:1, 10:2, 11:14, 22:22
**proposed** [1] - 9:22
**proposition** [1] - 9:21
**prospective** [1] - 6:21
**provide** [5] - 4:7, 21:7, 26:1, 26:2, 28:17
**provided** [2] - 25:2, 26:6
**provides** [2] - 14:20, 24:15
**providing** [2] - 17:15, 26:14
**provision** [5] - 16:20, 17:12, 22:20, 24:23, 24:24
**pulls** [1] - 25:1
**purchase** [14] - 8:12, 8:15, 8:17, 9:3, 14:16, 15:2, 16:10, 17:11, 17:17, 17:19, 20:13, 21:25, 28:18
**purchaser** [1] - 9:22
**purport** [1] - 26:1
**purporting** [1] - 26:2
**purpose** [1] - 18:6
**pursuant** [2] - 8:22, 24:21
**put** [2] - 18:4, 22:10
**putting** [2] - 23:24, 23:25

**qualifies** [1] - 25:14
**questioned** [1] - 9:6
**questions** [2] - 27:18, 27:19
**quote** [5] - 8:6, 9:18, 9:19, 9:21, 10:3

**quoting** [1] - 6:9

**R**

**real** [1] - 10:11
**really** [2] - 20:8, 24:10
**reason** [9] - 7:5, 9:24, 11:16, 12:3, 12:21, 19:16, 19:18, 26:13
**reasonable** [3] - 12:10, 26:13, 26:25
**reasoned** [1] - 10:12
**reasons** [2] - 5:10, 28:17
**receive** [1] - 26:21
**received** [2] - 11:3, 26:7
**receives** [1] - 26:16
**recorded** [1] - 2:8
**red** [1] - 13:25
**referred** [3] - 13:9, 14:16, 17:17
**refers** [2] - 17:17, 20:14
**refuted** [1] - 21:14
**regardless** [1] - 25:16
**relate** [1] - 27:19
**relates** [1] - 4:19
**relationship** [8] - 5:7, 8:23, 26:9, 26:21, 26:22, 27:19, 28:8, 28:12
**release** [2] - 21:8, 21:10
**released** [1] - 22:2
**relied** [1] - 14:8
**relief** [3] - 4:2, 4:11, 23:5
**rely** [1] - 9:16
**remaining** [1] - 28:23
**remains** [1] - 9:11
**Reporter** [1] - 2:5
**reporter** [1] - 28:17
**represent** [3] - 8:13, 8:14, 8:18
**represented** [1] - 24:8
**request** [1] - 12:3
**requested** [2] - 4:11, 26:7
**required** [2] - 15:16, 21:6
**requires** [1] - 3:25
**resolution** [1] - 12:12
**respect** [4] - 8:19, 24:1, 24:16, 26:3
**respective** [1] - 13:19
**responsibility** [2] - 10:9, 10:16
**responsible** [1] - 10:19
**rest** [1] - 20:15
**restatement** [1] - 14:20
**rests** [1] - 4:4
**result** [3] - 5:12, 24:11, 27:14
**retained** [3] - 11:13, 11:14, 13:11
**reversal** [1] - 12:11
**revised** [1] - 17:20
**RICHARD** [1] - 1:15
**Richard** [1] - 2:19
**rightly** [1] - 22:1
**rights** [1] - 19:6
**risk** [1] - 5:21
**RMR** [1] - 2:5
**RONALD** [1] - 2:5

**rotten** [1] - 20:1
**roughly** [1] - 21:16
**rule** [1] - 28:16
**Rule** [2] - 12:15, 24:6
**rules** [2] - 12:7, 12:15
**run** [1] - 6:13

## S

**SALAZAR** [1] - 1:21
**Salazar** [1] - 3:4
**sale** [4] - 15:16, 18:16, 21:1, 21:24
**sales** [3] - 16:18, 18:18, 21:15
**sanctions** [8] - 7:9, 12:3, 12:5, 12:23, 27:24, 28:2, 28:14, 28:15
**Sara** [1] - 3:13
**SARA** [1] - 1:21
**saw** [1] - 7:12
**Scharf** [2] - 3:1, 16:7
**scheduling** [1] - 29:12
**secure** [1] - 17:4
**see** [5] - 11:4, 14:1, 18:24, 23:9, 28:2
**seeing** [2] - 23:23, 29:1
**segregate** [1] - 18:23
**sell** [1] - 13:12
**seller** [34] - 5:16, 8:14, 8:21, 8:22, 10:10, 10:17, 10:19, 11:7, 13:12, 14:4, 14:17, 15:9, 15:13, 15:20, 16:17, 16:20, 17:5, 17:24, 18:18, 19:16, 19:21, 24:13, 24:14, 25:6, 25:13, 26:3, 26:23, 26:24, 27:6, 27:9, 27:17, 28:11, 29:4
**seller's** [2] - 7:19, 25:25
**sellers** [11] - 3:17, 3:18, 5:13, 8:16, 11:19, 11:21, 20:17, 20:20, 22:12, 23:12, 25:20
**sellers'** [1] - 22:11
**separate** [1] - 8:21
**series** [1] - 16:3
**service** [7] - 26:2, 26:3, 26:5, 26:15, 26:17, 26:20, 26:21
**services** [1] - 24:21
**Servideo** [1] - 3:9
**set** [2] - 14:8, 21:14
**sets** [4] - 8:13, 8:17, 13:19, 19:10
**several** [1] - 16:4
**shall** [1] - 8:22
**shifted** [2] - 10:10, 10:14
**short** [1] - 4:1
**show** [3] - 11:12, 13:10, 18:10
**showed** [1] - 23:2
**showing** [1] - 4:1
**shown** [2] - 19:7, 23:4
**shutting** [1] - 6:12
**side** [3] - 9:20, 13:4, 17:13
**sides** [1] - 19:11
**signed** [1] - 10:13
**significance** [1] - 16:9
**significant** [1] - 5:21
**simple** [1] - 29:6

**simply** [3] - 12:20, 22:5, 23:9
**Sirangelo** [3] - 3:9, 3:10, 17:14
**sitting** [3] - 18:3, 19:25, 20:1
**situation** [1] - 20:6
**six** [4] - 6:1, 6:3, 11:2, 13:14
**six-year** [1] - 11:2
**skeletal** [1] - 13:18
**slate** [1] - 3:11
**sold** [2] - 7:16, 15:2
**sole** [1] - 19:16
**solely** [1] - 5:9
**someone** [1] - 19:6
**soon** [1] - 29:1
**sorry** [2] - 8:15, 11:10
**sort** [4] - 26:9, 27:15, 28:5, 28:10
**sounds** [1] - 10:3
**speaking** [2] - 6:6, 6:7
**specifically** [2] - 8:12, 8:17
**Spinapp** [1] - 4:22
**standard** [2] - 3:24, 13:22
**stands** [1] - 9:17
**started** [1] - 7:1
**State** [4] - 2:1, 3:8, 15:12, 15:15
**state** [2] - 8:5, 27:20
**statement** [1] - 4:1
**statements** [1] - 12:14
**Staten** [1] - 13:13
**STATES** [1] - 1:1
**States** [2] - 1:12, 19:3
**statute** [11] - 4:21, 4:23, 4:25, 5:2, 8:4, 11:2, 17:22, 24:1, 25:17, 25:18
**statutory** [1] - 28:7
**stay** [1] - 19:15
**stems** [1] - 12:7
**stenography** [1] - 2:8
**stepping** [1] - 12:7
**Stern** [7] - 3:1, 16:5, 16:7, 17:14, 20:16, 20:20, 21:6
**still** [3] - 13:17, 18:3, 19:11
**stop** [2] - 15:3, 15:19
**STRAUB** [1] - 2:1
**Straub** [1] - 3:7
**Street** [4] - 1:15, 2:1, 2:20, 3:8
**style** [1] - 13:10
**subessential** [1] - 6:14
**substantial** [1] - 12:19
**substantially** [1] - 21:21
**substantive** [1] - 21:20
**substituted** [1] - 16:14
**substitution** [1] - 20:25
**successive** [1] - 7:25
**suddenly** [1] - 7:1
**sue** [1] - 13:23
**sued** [4] - 14:1, 18:13, 18:21, 18:22
**sufficient** [1] - 15:13
**suggests** [1] - 25:23
**supported** [2] - 12:10, 15:23
**supposed** [1] - 17:9
**sustained** [1] - 5:11

**switch** [1] - 19:25

## T

**tactically** [2] - 6:8, 6:10
**tax** [1] - 15:15
**terms** [10] - 5:18, 16:9, 16:21, 21:13, 21:20, 21:23, 22:6, 24:13, 24:21, 25:14
**THE** [10] - 2:13, 2:23, 3:2, 3:6, 3:11, 3:15, 12:25, 23:20, 28:22, 29:9
**themselves** [3] - 3:20, 15:6, 18:25
**therefore** [4] - 9:8, 24:5, 26:16, 27:15
**they've** [1] - 9:3
**thinking** [1] - 24:22
**third** [3] - 5:4, 14:22, 14:23
**Thirteenth** [2] - 1:19, 2:25
**thousands** [1] - 5:19
**three** [6] - 4:21, 4:23, 11:1, 17:21, 18:16, 20:19
**three-year** [4] - 4:21, 4:23, 11:1, 17:21
**ties** [1] - 24:12
**title** [4] - 4:15, 5:20, 7:23, 18:15
**today** [1] - 21:23
**together** [2] - 18:4, 19:8
**token** [1] - 15:24
**TOLKIN** [1] - 2:5
**took** [4] - 13:8, 16:1, 23:6, 27:4
**tort** [2] - 4:24, 19:22
**tortuous** [12] - 4:20, 5:3, 7:20, 8:3, 14:1, 17:22, 18:11, 18:14, 19:13, 25:3, 27:3, 27:21
**tortuously** [1] - 25:19
**total** [1] - 21:4
**transaction** [3] - 6:22, 8:24, 28:4
**transactions** [1] - 16:3
**transcript** [2] - 2:8, 9:10
**Transcript** [1] - 2:9
**transfer** [6] - 15:17, 16:6, 24:18, 24:20, 27:12, 27:13
**transfers** [3] - 6:7, 7:11, 27:8
**trees** [1] - 23:23
**trial** [1] - 29:10
**tried** [1] - 9:12
**troubling** [1] - 6:4
**true** [1] - 20:21
**try** [1] - 25:5
**trying** [1] - 5:10
**turn** [1] - 17:17
**turned** [1] - 11:23
**turning** [1] - 22:13
**twisted** [1] - 11:23
**twists** [1] - 23:24
**two** [4] - 11:25, 17:10, 17:16, 24:15
**type** [1] - 9:13
**typical** [1] - 18:24

## U

**U.S** [1] - 1:5
**ultimately** [5] - 13:12, 17:3, 21:3, 27:11, 27:18
**under** [7] - 11:3, 12:15, 15:14, 23:12, 25:3, 25:12, 25:14
**understood** [2] - 10:18, 29:13
**undertake** [1] - 9:22
**undertaken** [1] - 12:12
**undertook** [1] - 5:19
**unfettered** [1] - 16:17
**unfortunately** [1] - 9:17
**UNITED** [1] - 1:1
**United** [1] - 19:3
**united** [1] - 1:12
**unjust** [9] - 10:25, 18:14, 19:24, 20:5, 22:25, 26:4, 27:2, 27:21
**unjustly** [1] - 11:13
**unlawful** [1] - 26:4
**unremarkable** [1] - 16:8
**unrestricted** [1] - 27:10
**up** [9] - 8:10, 9:4, 9:12, 11:25, 17:12, 18:11, 20:9, 21:20, 23:2
**utter** [1] - 7:21

## V

**valid** [1] - 5:3
**various** [1] - 9:12
**versus** [1] - 2:14
**via** [1] - 20:25
**viable** [1] - 19:10
**view** [2] - 21:25, 29:6
**views** [1] - 5:17
**Vincent** [1] - 3:9
**virtual** [1] - 23:12
**vis** [4] - 15:13, 26:5
**vis-a-vis** [2] - 15:13, 26:5
**VITALIANO** [1] - 1:11
**voice** [1] - 3:12

## W

**waiting** [1] - 18:3
**warranted** [1] - 12:17
**watching** [1] - 17:7
**well-grounded** [1] - 12:17
**whatsoever** [1] - 25:10
**whole** [1] - 6:14
**Willy** [1] - 3:1
**win** [1] - 7:8
**wish** [2] - 3:22, 13:1
**wished** [1] - 16:21
**wishes** [1] - 22:3
**wonder** [1] - 7:18
**wonderful** [1] - 10:3

**world** [1] - 29:6

## Y

**year** [6] - 4:21, 4:23, 10:9, 11:1, 11:2, 17:21
**years** [6] - 6:1, 6:3, 6:23, 13:15, 20:19, 23:3
**YORK** [1] - 1:1
**York** [15] - 1:16, 1:20, 2:2, 2:6, 2:20, 2:25, 3:8, 4:16, 11:3, 12:7, 14:6, 14:19, 15:12, 15:15, 28:7

## Z

**Zilberg** [4] - 2:24, 12:25, 13:5, 23:21
**ZILBERBERG** [8] - 1:19, 1:20, 2:24, 3:4, 3:13, 3:23, 23:19, 29:15